E-FILED
Tuesday, 29 September, 2026 03:31:08 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **JUSTIN ADRIS EASLEY,** <br> **Plaintiff,** | ) <br> ) | |
| | ) | |
| **v.** | ) | **Case No. 25-cv-3041** |
| | ) | |
| **CHASTITY ANDERSON,** <br> **Defendant.** | ) <br> ) | |

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

Pro Se Plaintiff Justin Easley filed this action under 42 U.S.C. § 1983, alleging Defendant Chastity Anderson, a deputy with the Pike County Sheriff's Office violated his constitutional rights. For the reasons that follow, Defendant's Motion for Summary Judgment (Doc. 12) is GRANTED.

## I. FACTUAL BACKGROUND

On July 2, 2024, Plaintiff drove from his home in Hannibal, Missouri, to Pittsfield, Illinois for a court hearing on his recent traffic citations. (Doc. 12, ¶¶ 1-3). Upon arriving at the Pike County Courthouse, Plaintiff was informed that the traffic citation proceeding had been voluntarily dismissed by the Pike County State's Attorney's Office on July 1, 2024, by way of a *nolle prosequi* entry. (*Id.* at ¶¶ 4-5). Plaintiff represented himself *pro se* in connection with the traffic citation proceeding. (*Id.* at ¶ 6).

While Defendant alleges Plaintiff believed he was entitled to attorney's fees and demanded such fees or some other type of compensation, Plaintiff claims he was simply seeking an explanation and accountability after learning his case was dismissed without

notice. (Doc. 15, Resp. to ¶¶ 7-8). Employees from the Pike County Circuit Clerk's Office referred Plaintiff to the Pike County State's Attorney's Office. (Doc. 12, ¶ 9). Plaintiff spoke to an employee in that office, before State's Attorney Walker Filbert spoke directly to Plaintiff at the front counter.[1] (*Id.* at ¶ 10). Plaintiff again demanded reimbursement for attorney's fees. (*Id.* at ¶ 11). State's Attorney Filbert told Plaintiff he was not entitled to attorney's fees and that, if Plaintiff disagreed, he should speak to an attorney or seek relief from the court. (*Id.* at ¶ 12). Defendant alleges Plaintiff refused to accept this answer and continued to demand attorney's fees. (*Id.* at ¶ 13). Plaintiff and State's Attorney Filbert began yelling at each other over the disagreement. (*Id.* at ¶ 14).

Defendant Chastity Anderson is a law enforcement officer employed as a deputy with the Pike County Sheriff's Office. (*Id.* at ¶ 15). Defendant Anderson was on duty and working in the courthouse during the afternoon of July 2, 2024. (*Id.* at ¶ 16). At around 2:45 p.m., Defendant Anderson learned someone within the courthouse had tripped an emergency silent alarm. (*Id.* at ¶ 17). She heard shouting coming from the State's Attorney's Office and walked over to investigate. (*Id.* at ¶ 18). Upon arrival, Defendant saw and heard Plaintiff and State's Attorney Filbert yelling at each other. (*Id.* at ¶ 19). Defendant identified herself to Plaintiff as a deputy with the Pike County Sheriff's Office and instructed Plaintiff, multiple times, to leave. (Doc. 12, ¶¶ 21-22). Plaintiff refused to

---

[1] Plaintiff purports to dispute some of these allegations but his response does not address the particular allegation. For example, he responds to this allegation by stating "Plaintiff denies he engaged in criminal or threatening behavior. Plaintiff testifies he was engaged in verbal advocacy and seeking answers." (Doc. 15, Resp. to ¶ 10). Defendant did not allege in paragraph 10 that Plaintiff engaged in "criminal or threatening behavior."

leave the State's Attorney's Office after being told to do so by both Filbert and Defendant.[2] (*Id.* at ¶ 23). Defendant alleges that, at one point, Plaintiff was yelling so excitedly that when he turned directly towards Defendant, spittle flew out of his mouth and hit Defendant in the face. (*Id.* at ¶ 24). In response, Plaintiff denies intentionally spitting on Plaintiff and claims that any saliva that left his mouth was inadvertent and not aimed at anyone. (Doc. 15, Resp. to ¶ 24).

Defendant told Plaintiff she was going to escort him out of the courthouse and, if he did not follow her instructions, she was going to charge him with disorderly conduct. (Doc. 12, ¶ 25). Plaintiff complied and allowed Defendant to apply handcuff wrist restraints. (*Id.* at ¶ 26). The parties dispute whether the wrist restraints were applied in front of his body or behind his back. (*Id.*; Doc. 15, Resp. to ¶ 26). Plaintiff testified that Defendant physically guided/pulled him using the handcuffs during escort and maintained custody until release. (Doc. 15, ¶ 2). Defendant escorted Plaintiff out of the courthouse. (Doc. 12, ¶ 27).

Once outside, Plaintiff began to lower his voice and calm down. (*Id.* at ¶ 28). Defendant escorted Plaintiff to the sheriff's office located across the street from the courthouse. (*Id.* at ¶ 29). Defendant spoke to Plaintiff in an interview room for a few minutes, then removed the handcuffs and told him he was free to go but could not return to the state's attorney's office. (*Id.* at ¶ 30). Plaintiff suggests he was in the interview room

---

[2] While Plaintiff purports to dispute the allegation on the basis that he denies "refus[ing] to leave in a manner justifying physical restraint," (Doc. 15, Resp. to ¶ 23), Defendant does not here allege that physical restraint was used.

for more than a few minutes. (Doc. 15, Resp. to ¶ 30). Plaintiff further testified that Defendant could not promptly unlock the restraints because she did not have her handcuff key, so the detention was extended for that reason. (*Id.* at ¶ 4). Plaintiff stayed at the sheriff's office to try to talk to Defendant about the fee issue. (Doc. 12, ¶ 31). Defendant reminded Plaintiff he was free to leave. (*Id.* at ¶ 32). Plaintiff subsequently realized he had left his keys inside the courthouse. (*Id.* at ¶ 33). He waited outside of the courthouse while Defendant went inside to retrieve the keys and return them to Plaintiff. (*Id.* at ¶ 34).

Plaintiff was never arrested, criminally charged, issued any citations, or given any notice to appear in court as a result of the July 2, 2024 interaction. (*Id.* at ¶ 35). Defendant did not use any physical force or weapons during the encounter. (*Id.* at ¶ 36). Plaintiff disputes the prior assertion to the extent it suggests no physical control or force occurred. (Doc. 15, Resp. to ¶ 36). Plaintiff did not suffer any physical injuries. (Doc. 12, ¶ 37). Plaintiff attempted to seek mental health treatment because of the July 2, 2024 interaction, but declined to do so when he learned he would have to pay out of pocket costs.. (*Id.* at ¶ 38; Doc. 15, ¶ 8). Plaintiff testified that his primary harms include humiliation, emotional distress, and degradation from being handcuffed, escorted out of the courthouse, transported to the sheriff's office, and held pending release. (Doc. 15, ¶ 7). Defendant contends Plaintiff's allegations are immaterial because it is insufficient to establish any actual compensable injury or harm when Plaintiff was simply escorted out of a courthouse after refusing multiple instructions to leave. (Doc. 18, Resp. to ¶ 7).

## II. DISCUSSION

Defendant contends she is entitled to summary judgment because no Fourth Amendment violation occurred given that the factual record demonstrates there was reasonable, articulable suspicion to justify a brief investigative detention. Even assuming there is a constitutional violation, Defendant alleges she is entitled to qualified immunity. In response, Plaintiff asserts a reasonable jury could find a Fourth Amendment seizure and qualified immunity is not appropriate on this record.

### A. Summary Judgment Standard

Summary judgment is appropriate under Rule 56 if the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Metzler v. Loyola University Chicago*, 164 F.4th 612, 616 (7th Cir. 2026) (citations omitted). The court construes all facts and draws all reasonable inferences in favor of the non-movant. *Id.* In considering whether summary judgment is warranted, the court does not weigh evidence, resolve credibility disputes, or choose between competing factual narratives. *Johnson v. Edwards*, 164 F.4th 1074, 1079 (7th Cir. 2026). The moving party may prevail "by showing an absence of evidence to support the non-movant's claims." *Metzler*, 164 F.4th at 616.

### B. Fourth Amendment Claim

The Fourth Amendment, as applied to the states through the Fourteenth Amendment, "guarantees an individual the right to be free from unreasonable searches and seizures by the government." *Moderson v, City of Neenah*, 137 F.4th 611, 614 (7th Cir.

2025) (internal quotation marks omitted). A police officer seizes an individual when she restrains that person's freedom to walk away. *Id.* Courts consider the totality of the circumstances in determining "whether a reasonable person would feel free to terminate the encounter." *Id.* A court's determination of the reasonableness of a seizure largely depends on the type of seizure. *Id.* at 615. "Citizen-police interactions are generally categorized as consensual encounters, stops, or arrests." *Id.* A *Terry* stop is a brief investigative stop that is a seizure for purposes of the Fourth Amendment. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). Officers conduct such stops when probable cause to arrest is lacking but the officer nonetheless has reasonable suspicion that the individual may be engaged in criminal activity. *Id.* at 615. "In doing so, an officer may briefly detain a suspect to verify or dispel his suspicion." *Id.* In assessing the reasonableness of a seizure, courts must "first consider whether the detention was justified at the outset." *Id.* "A *Terry* stop is reasonable at its inception if the totality of circumstances, including the officer's experience, would lead the officer to reasonably suspect the individual of wrongdoing." *Id.*

Disorderly conduct under Illinois law involves an individual "knowingly" doing "any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1); *see also People v. Swenson*, 181 N.E.3d 116, 127 (Ill. 2020) ("The State needed to prove that defendant knowingly engaged in an act in such an unreasonable manner as to alarm or disturb another and to provoke a breach of the peace."). The intent of the offense is "to guard against an invasion of the right of others not to be molested or harassed, either mentally or physically, without justification." *People*

*v. Davis*, 413 N.E.2d 413, 415 (Ill. 1980) (internal quotation marks and citation omitted). Culpability depends on the type of conduct and surrounding circumstances. *Swenson*, 181 N.E.3d at 127.

The Court has no difficulty determining an officer in Defendant's position would reasonably suspect that Plaintiff's conduct was unreasonable, served to alarm or disturb others, and certainly could provoke a breach of the peace. The Pike County Courthouse is a workplace for numerous individuals in addition to being a facility accessed by members of the public on a regular basis. It is objectively unreasonable to scream at a state's attorney and deputy sheriff demanding financial reimbursement for attorney's fees as a prevailing *pro se* litigant. Defendant does not dispute that someone in the courthouse signaled the emergency silent alarm to alert law enforcement. This suggests that Plaintiff's behavior was alarming to at least one individual present in the courthouse. It is also undisputed that Defendant Anderson heard shouting coming from the state's attorney's office. Such behavior is unusual in an office setting and could also alarm or disturb others in the office or in the building and provoke a breach of the peace.

Plaintiff did not initially leave the state's attorney's office and courthouse despite multiple requests to do so by Defendant and State's Attorney Filbert. Because Plaintiff refused to leave, an officer such as Defendant could also reasonably suspect that Plaintiff was committing criminal trespass. *See* 720 ILCS 5/21-3(a)(3) ("A person commits criminal trespass to real property when he . . . remains upon the land of the other, after receiving notice from the owner or occupant to depart.").

Plaintiff contends that a reasonable juror could find that the seizure exceeded reasonable bounds when he was handcuffed, physically controlled, and removed from the courthouse before being relocated across the street to the sheriff's office, placed in an interview room, and held until release. Plaintiff does not say how long he was at the sheriff's office but it appears to be no more than a matter of minutes, perhaps just long enough for Defendant to locate the keys to the handcuffs.

Based on the foregoing, the Court finds that a reasonably prudent officer in Defendant's position on July 2, 2024, could reasonably believe that Plaintiff had committed or about to commit at least two crimes—disorderly conduct and criminal trespass. Significantly, even when Plaintiff was told he was free to leave, he did not do so. Plaintiff continued to talk to Defendant about the fee issue and then realized he had left his keys at the courthouse. Plaintiff finally left after Defendant retrieved his keys and returned them to Plaintiff. Even after construing all facts and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that a reasonable police officer in Defendant's position could find there was a reasonable, articulable suspicion to support a brief investigative detention of Plaintiff based on the following circumstances: (1) courthouse staff had set off an emergency silent alarm; (2) she heard shouting in the state's attorney's office; (3) she witnessed Plaintiff refuse instructions to leave by State's Attorney Filbert; (4) Plaintiff refused Defendant's instructions to leave; and (5) Plaintiff was arguing to such an extent that spit was flying out of his mouth towards Defendant's face when he squared his body up towards Defendant. While the Court accepts Plaintiff's assertion that he did not intend for spit or saliva to leave his mouth, that fact only

illustrates how spirited the argument had become by the time Defendant arrived. Based on the undisputed facts, the Court finds there is no factual dispute that the brief investigative detention here was reasonable. Additionally, the Court finds the detention was not unreasonably extended. Summary judgment is warranted in favor of Defendant.[3]

For the reasons stated herein, Defendant's Motion for Summary Judgment (Doc. 12) is GRANTED. The Clerk will enter judgment and terminate this case.

Enter: September 29, 2026

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE

[3] Even if Plaintiff could identify a violation of his constitutional rights, Defendant is entitled to summary judgment based on qualified immunity. In determining whether qualified immunity applies, courts consider whether the right was clearly established when the violation occurred and under the circumstances present. *Estate of Thomason v. Behn*, 181 F.4th 724, 734 (7th Cir. 2026). A plaintiff can show a right was clearly established by pointing to "a clearly analogous case establishing the right to be free from the conduct at issue" or by showing that the officers' conduct "was so egregious that no reasonable person could have believed that it would not violate established rights." *Id.* Plaintiff has not done either.